The second case on our call of the docket today is case number 110984, Petersen, Kevin Petersen v. Janet Kellogg, Petersen, agenda number 10. Counsel for the appellant, you may proceed. Good morning, justices. Good morning, counsels, attorneys Starkoff and Nathanson. How does it make you feel when everybody gets out and leaves? I feel a little bit better about that, actually, judge. I must say it takes a little bit of the pressure off a little bit. My name is Annette Fernals. I represent the petitioner, Janet Kellogg-Petersen. The issue before the court is whether the petition for contribution to college is an initial application for relief or is it a modification of a divorce judgment if the judgment reserves the issue. I just want to briefly give the court just a few overview facts of the case. The parties were divorced in 1999. At that time, Dr. Petersen was a general surgeon and Janet was a part-time hospice nurse. The parties had three sons. At that time, none of the children was in college or about to go into college. The divorce judgment specifically reserved the issue of contribution to college pursuant to section 513 of the Illinois Marriage and Dissolution of Marriage Act. Shortly after the divorce, Kevin was adjudicated bankrupt and moved to Nevada. He later remarried and reestablished his practice. Subsequently, on or about May 2007, Janet filed a petition to allocate college contribution for the parties' three sons. About this period of time, Janet herself had remarried and then had the financial resources to bring about this action. At the time she filed her petition, the youngest son had recently commenced college. The oldest child had graduated from Cornell one year prior. And the middle child had attended his first year at Wake Forest University and then transferred to the University of Texas. The reason Janet waited to file her petition when she did, as she stated in her trial court testimony, was that it took her eight years to collect the $70,000 of the property award that was supposed to be given to her in the divorce judgment. She had to initiate garnishment proceedings. She had to wait for the bankruptcy settlement. She testified that in pursuing Dr. Peterson, it had been hugely expensive, time-consuming and emotionally draining. She simply could not come to court every year. She needed to do this all at one time and then came to court when her youngest child started college because she knew the facts at that time. The trial court ordered Dr. Peterson to contribute 75 percent of the children's past, present and future college expenses, as he had considerably and vastly out-earned Janet. The appellate court affirmed the allocation, however, it determined that Janet could only receive relief from the date of filing her petition. The appellate court maintains that Section 510 of the Illinois Marriage and Dissolution of Marriage Act precludes any recovery for college prior to the filing of a petition for relief. It is Janet's contention that the appellate court ruling is not supported by the statute, it's not supported by the case law and it's not supported by the public policy of this state. When Janet filed her application pursuant to Section 513, she was seeking an adjudication of the judgment and not a modification of the judgment. And when you look... When the petition was filed, was it not called a modification? No, it was called a petition for allocation of college contribution. That is, and it was brought pursuant to Section 513. Is this a question of the statute being ambiguous, 513? I don't think that 513 has been, is necessarily ambiguous as much as it seems to be interpreted in conjunction with 510 and I don't think there has been a careful reading by the appellate decisions of the languages, the language contained within 513 and 510. And I'm going to specifically get into that issue right now if I may, Justice. When you look at Section 513, 513A specifically looks to the issue of support. It's not until you get to 513A2 when you see the issue that the court may also, and I emphasize the word also, make provision for the educational expenses of the child. So you have above it the court addressing the issue of support and below it making specific findings then about the issue of educational expenses. When you look at 513B, it specifically states that in making awards or, and I emphasize or, pursuant to a petition or motion to decrease, modify, or terminate any such award, the court shall consider the following relevant factors. And I think from the language of the statute itself, that disjunctive use of the term or implies that making an award is not a modification. It is an application to seek relief. When the court If we should agree with you that this is the making of an award and not a modification. Correct. How do you respond to your opponent's argument that it's unfair because these factors that you just alluded to are being taken into consideration at a time other than when the initial expenses were incurred. That is, we should go back to look at his income, her income, the children's resources back in perhaps 2002 rather than in 2009 or 10. It was actually in 2006, but you're right, Justice, but even when you look at the facts in this case, and there were stipulations by the parties of the incomes in 2002, 2003, 2004, 2005, and each and every year it was stipulated. That's all in the record. It's in the record, stipulated by the trial court. And each and every year, Dr. Peterson had out-earned her at least by six times every year. And he had an increased financial ability to pay. I do want to turn to Section 510 because when you Does the record reflect what the trial court did with that? Did the trial court consider the income as of 2002 or 2006 or all of the years? In the trial court's order, it includes the stipulation of the various years. It also concludes the stipulation of 2006 and what the monies were earned in 2006. I'm not sure if the court pointed to any specific year when he made his order, but it is included in Judge Lopez's rather lengthy order, all the stipulations of the income of the parties for a period of four to five years from 2002 onward. When you look at the language of Section 510A, which it is specifically stated in Section 510A, it specifically says that any provisions of any judgment respecting maintenance or support may be modified only as to installments accruing subsequent to due notice by the moving party of the filing of a petition or motion for modification. The appellate court seems to think that this term, support, includes educational expenses. But when you look specifically at 510D and E, that's when you see the interjection of the term educational expenses, and you see it all through paragraphs D and E. For example, the court says the right to petition for support or educational expenses or both under Sections 505 and 513 is not extinguished by the death of the parent. You see at that time the court, the legislature is specifically interjecting the terms educational expenses, and that term is not included under paragraph 510A. Therefore, we make the point that 510A does not apply in this case. There is no modification of an award because no original award has been met. The issue has only been reserved. And so it can't be a modification going forward when there has been nothing there to modify. Also when you look at some of the case law that the court has, that the various districts have published, you look at a case like the Fritch case, which required the father to after the child had actually graduated from college. The hearing actually took place after the child graduated. Also in the Wade case, you have the father being ordered to reimburse two-thirds of college expenses. This is a precedent in some of the cases that have been before the court. But I think one of the other bigger issues before this court is the whole issue of public policy. And in 1978, this court in the Kujawinski case said the purpose of Section 513 was to minimize any economic and educational disadvantage to children of divorced parents. That's really the purpose of this case. And though I recognize that not every child of a divorced parent has an absolute right to college education, because there are certain 513B factors, like the ability to pay, that come into play, but it's an important benefit that a parent of a divorced child tries to seek relief under 513. I think when you look at the case law and what has transpired, one of the things that the distinction, in my opinion, the distinction has not been made is really what's the difference between child support and college education. The Waller case seems that the appellate court relied upon seems to treat all support as being the same. But it's just not the same. Not only does 505 have different provisions for child support than 513, you have to think that under 505, you know, you have state programs. You have the state's attorney who's prosecuting child support. That doesn't happen for college contribution. You have federal programs, like 4D programs that the state has to adhere to to receive economic relief that must be adhered to. There is no federal mandate or any federal requirement about contribution to college. You also, when you think about the amount of, just in terms of getting child support, it's 505 is a very formulaic guideline that's laid out. A person can tender their paycheck, they can tender a W-2, and child support can easily be calculated. That does not hold true for college. Generally, you have to look at the 513B factors and then the court has to assess the income and the property of the parties in determining should an award be made or should not award be made. Counsel, let's talk for just a minute about your position with respect to Gregory. Yes. As I understand your position, it's that the language of 513 only provides a limitation which prevents a petitioner from seeking contribution for graduate degrees. For undergraduate degrees and that he cannot, and he cannot seek relief for his graduate studies. Right. That's my position, yes. Right. So the prohibition would be with respect to graduate degrees. Correct. But what about where the statute says the authority to make provision for education expenses terminates when the child receives his undergraduate degree, which is the case of Gregory, right? Correct. And that's what I believe, that's why he could not seek relief from the trial court for his master's degree, which he ultimately obtained. And that holds true also in Fritch when after the degree was granted, an order was made for the father to make retroactive payment for that bachelor's degree, but not for any subsequent post-graduate study. But what is terminates when the child receives his undergraduate degree? That, in my, that means that it ends at the baccalaureate degree. That ends when the undergraduate degree is received. All right. So specifically, it says in making awards under paragraph one or two of subsection A, or pursuant to a petition or motion to decrease, modify, or terminate any such awards. Let me see here. Actually, I was reading for the, from the wrong portion. The authority under this section to make provision for educational expenses, except where the child is mentally or physically disabled and not otherwise emancipated, terminates when the child receives a baccalaureate degree. So it, it's, my question is specifically the authority to grant terminates when he receives. The authority vis-a-vis the termination. Like you're speaking in terms of does the court have jurisdiction to make, is that what you're asking? The statute says the court has authority until he gets his baccalaureate degree, which he had in this case. Right. So does the court still have authority to confer monies for the undergraduate degree? I say yes, and here's why, Judge. I have this particular case before the trial court right now where the mother has filed a petition for college and because of the docketing schedule in Cook County, it appears that we will not be set for trial until after the child has graduated. Has she come to court before and sought relief from the court? Yes, she's come to court every year almost to seek relief from the court for the, for the father to contribute to college. But other things come into play, such as the scheduling, where her petition is timely filed, it's when can the matter be heard. So under, applying your analysis, the fact that these children graduate from college June 5th or whatever, would preclude her. Well, first of all, it's not my analysis. It's my question with respect to what the statute says. And what you've just told us is that in the case before the trial court, that prior to that, that baccalaureate degree, there have been motions brought by you with respect to getting the monies for that, that baccalaureate degree. In a different case, you're correct. That's not the case here with Gregory. You're correct. Right. The filing came after. So I guess the question is, does the statute say, or do you say it doesn't say, that the court has authority? Now I'm only talking with respect to Gregory now. I understand. Authority only until that undergraduate degree is attained. It's my In this case, it was attained prior to you even bringing the motion. You're correct. It's our position that the undergraduate degree obviously was obtained before the petition was filed. However, we are seeking relief. And when we looked at the, we were seeking relief for that degree, for that child as well. When we looked at the legislative history and to try to ascertain when this came to be, it's when the General and allowed, and then allowed it to be until a baccalaureate degree was obtained. So basically what I'm trying to say, I believe, I believe that it's proper for the court to at least, and that it has the authority to award for the undergraduate degree, but nothing beyond the undergraduate degree based on the legislative hearings at the time. Counsel. Yes. According to your argument and understanding, under 513, the court does equity, really, with regard to the child and the parents. Is that right? Correct. As a matter of fact, that term, as equity may require, appears in 513A, Judge. And so does that mean that, do you believe that also means that the equitable defense of latches is available as in this case to defend the matter? In other words, the petitioner slept on her rights for, I guess, on her rights for years, and therefore, the court can consider that? I think in this particular case, she obviously did not sleep on her rights for years. She waited until the last child went to school. I think when you look at cases that counsel has brought up in terms of people seeking relief for child support, like the Connor case and the Norene case, where people come back 14 or 20 years, I think the court in its discretion could consider that. But in this case, you have actually some judicial economy coming into play, where you have one person coming to court for all three children to seek application at one time. So you're saying it is available, you just don't think it's appropriate here? Yes. I think it's up to the court to have the discretion to make that call. Has someone rested on their rights? What efforts have they made? Has the father been unable to be found over a period of years or a period of time? Those are all factors I believe the trial court has the right to consider. I just wanted to continue by saying that I think that when this court reviews the statutes, because you have the ability to look at everything de novo, I think that you can see that the Janet who is actually making an initial application for an adjudication of the judgment, she's not seeking to modify it. And the reservation of the issue in the judgment does not actually make an award. And so when you look at the language of 513, I think clearly under B she's making an award and the retroactive applications of 510 do not apply. Do you think your position would be different if there was no reservation in the original agreement incorporated in the judgment? It would be different because of this. I think the reservation has given Mr. Dr. Peterson notice that either party has the right to come to court and seek relief. If the judgment was silent in that regard, I would think that a claim might be able to be made that they weren't aware of the law in Illinois, some claims such as that. But I think the actual reservation has made it very clear that either party had the right to come to court and seek relief. So your time's out, but I just want to ask this. When you said either party, there's nothing in 513 or 510 or any statute that dictates who must bring that petition, is that correct? There certainly isn't in 513. Either party could have come to court and asked for an adjudication. Well, that's what I'm getting to. Whether it's the father in this case or the mother in another case, whoever. Or the father himself in this case. Either party could have come to court. Could bring it at any time. Exactly. All right. Thank you. Counsel for the appellee. Mr. Chief Justice, and may it please the Court. Do you mind starting where we left off? I do not. Well, what's your position on those questions? Do you think the existence of the reservation clause in the original agreement makes a difference if there were no reservation? And the second question is, was there anything that prevented your client from bringing a petition earlier to establish? There was nothing that prevented him, Chief Justice Kilbride, clearly. You know, Justice Freeman reminded me, I prevented you from stating your name for the record. Philip Nathanson for Dr. Peterson, the appellee. Thank you. Either side under the statute could have brought a petition. But I do think that your question is important on what is and what is not a modification. You have an original 1999 judgment that says the issue of college expenses is reserved. One could put it that that's an award of zero dollars to either side for college expenses. When, years later in 2007, there's a petition filed and there is an award pursuant to that petition. Counsel, isn't it that the father didn't know about it? He would have known about this if his sons were going to college. I think in a general sense, Justice Burke, he knew his son was going to college. There was conflicting testimony about letter writing and things of that nature as to what the details of Gregory going to Cornell were. But other than a general, Gregory's going to college, there was no specific disclosure or petition saying, here's the tuition, here's the room and board, here's the books, here are all the details, and I'm assuming, and Mrs. Peterson testified, she was assuming Dr. Peterson would pay for most of this. There was no such disclosure. Of course, in a general sense, he knew about that. Sadly, his relationship wasn't great at that point with his son, but I don't think that's really dispositive. So we don't dispute that, generally speaking, he knew Gregory was going to college. Mr. Nathanson, do you think the intention of the judge and the parties in the original adjudication indicating that college expenses were reserved was taken to mean zero dollars for either side? Zero dollars at that point, Justice Thomas. I'm not saying it meant zero dollars in futuro forever. I think at that point, there was a decision made that on the college expenses, there would not be either a dollar amount attributed, because nobody was in college at that point, or a percentage allocation, and you could have that without dollar amounts. I think it was a decision that we're going to leave that issue where it is at the moment for subsequent consideration, but as we say in our brief, when there is then an award made, and I admit I've never cited Black's Law Dictionary to this court before, but it defines modification as a change to something. And I think the focus, yes, we have to focus on the 1999 judgment, but the fact is when that petition is filed in 2007, and an award is made, that is a change to something. So you have an issue that's mentioned, but not disposed of entirely, and then you have an award, both in terms of dollars and percentage allocation, that is a change, an alteration, however one wants to look at it. But what is it a change to, if they decided to reserve talking about the issue, and nothing was decided? So what's it changing? Justice Burke, I don't mean to be disrespectful in answering your question this way. I think the initial 1999 judgment is a decision or judgment not to decide specifics, but to deal, to note that the issue has been considered, but not completely disposed of. But if a court reserves something, it's not a final judgment as to that aspect. You couldn't appeal that. Well. How is that a final, I don't understand how it's a judgment if it's a reservation. We cite four cases in our brief, the Waite case, the Nerini case, the Pataki case, there's another one cited, which have treated this very topic as a final judgment, as a judgment that reserves the issue for subsequent, complete adjudication. Those cases have been the law of this state for 20 years. When this petition was filed in 2007, those cases had been on the books for 20 years. And the legislature never indicated any displeasure whatsoever with that treatment of a reserved issue, and then subsequent adjudication. The Conner case, I'm sorry, which was the fourth one, dealt with child support generally, and then the other three deal with education expenses specifically. And all of them unanimously in an unbroken line of decisions have said that a petition to allocate child support and education expenses is a petition to modify even though the original issue was reserved. So I think by implication. So that is not even an issue before this court? Well, I think they've raised that in their PLA. But I think by implication, Justice Carmine, the courts have said in that situation if it's a petition to modify, therefore we're dealing with a final judgment that's being modified, to answer your direct question to me as to whether it was a final judgment. And I think here the timing is crucial, and I believe Justice Carmine alluded to this in his question. We have a 1999 judgment, and then a 2002, three years later, Gregory goes to Cornell. There's no petition filed at that point in time. Dr. Peterson is not working as a doctor in 2002. He was working as a computer programmer, making $94,000 a year. That was his status for the next four years. The entire time while Gregory is at Cornell, Dr. Peterson is not practicing medicine. He is practicing computer programming, earning $94,000 a year. Thereafter, he goes back to the practice of medicine, and by the end of 2006, he's making $240,000 a year. So his circumstances change dramatically at the time, right immediately before the time of the filing of this petition. Under petitioner's theory, they have an unlimited period of time to file this. Well, the real issue is whether it's a modification or not, right? Because if it's a modification, at least the appellate case law would say that no retroactive application, right? That and the issue you raised, Justice Thomas, on the express statutory provision as to Gregory that the court didn't have authority at all after the fact. Yeah, Gregory is a second issue. I agree with that. But if we look at just the language, it says, in making awards under paragraph 1 or 2, and 2 would be the educational expenses of subsection A, or pursuant to a petition or motion to decrease, modify, which is your position, or terminate any such award. So isn't the clear language, it says, in making awards, and then the disjunctive or is used, followed by modify, doesn't that support her position, the opposing counsel's position, that the conclusion could be, this could, a conclusion that this could be considered an original award rather than a modification? Otherwise, what does the or mean? Well, I think the or means that what Chief Justice Kilbride was alluding to when he asked me to start with where he left off, which is this. If college education expenses were never mentioned at all in the original judgment, silent, child support, silent, and then somebody can still file a petition under that section, under the disjunctive or, and come in and say, I want an original award of child support or educational expenses. At that point, one could argue, I don't want to be understood as conceding the point, but because we're relying on four appellate cases that have been decided over 20 years that say it is, as a matter of law, a modification, even when Right. We've never looked at it though, right? I agree with that. Okay. That's absolutely true. But here you have a considered recognition that this is an issue for the parties, but an issue we're not going to quantify or allocate in a percentage way until another time. And I understand the court's position, but respectfully, on behalf of Dr. Kline, I think one needs to go to the next point, which is, if it is not a modification, what limit is there on the petitioner's ability to come in and ask for a so-called original award multiple, multiple years after the fact? I mean, my daughter took eight years to finish undergraduate. One can imagine there are many other situations out there that are analogous. Under that scenario, the petitioner can just wait and wait and wait and come in years later and say, oh, by the way, I want reimbursement, which implicates when you determine what the resources of the parties were and are. And I think as a matter of public policy, since public policy is being raised here, I think the public policy of Illinois surely is that both parties should have input on their children's education, on the expense. Can the parties really afford Cornell or Wake Forest or anything like that? In that scenario that you described, then, even your client could have come in and said, I want this settled for my responsibility to my child. And he could come in at any time, too, to have that court determine what his responsibility would be instead of just waiting in the background until there was a reimbursement issue. Justice Burke, we do not dispute that he could have been the petitioner. As counsel alluded to, he was going through a bankruptcy. He came out of that, became a computer programmer, didn't practice medicine for a while. Obviously, there was evidence of his dislocations and financial difficulties. Sure, he could have retained counsel. We don't dispute that point. But what we do argue is this on the crucial modification question. 513 says the court may award for the support of the child or children educational expenses of the child or children. Counsel says in her brief, this is in the nature of support. I would argue to this court, it is support. The statute says it is support. There is no in the nature of. And given the fact that it is child support, what we're talking about here, it may not be groceries, but it's another form of child support. Therefore, the modification law for child support should apply just like it does in any other child support context. Counsel, you raised some interesting points in your argument prior to Justice Burke's question about timing and kind of laying back and not making the decision in a timely fashion and input about where the child goes to school and so forth. Why doesn't the equitable defense of latches adequately protect you or a client in your man's position from these concerns? I think the equitable, I agree with you, Justice Garmon, that the equitable defense of latches should apply. I don't think it's the only defense. I don't mean to suggest that either. No, I know you didn't suggest that. Trial counsel raised the defense of non-retroactivity, which is analogous to a latches argument, that, okay, the law in petitions is any recovery relates back to the date of the filing of the petition. After all, he didn't, trial counsel never contended that, as to Ian and Ellis, the other two sons here, that there could be retroactivity from the date of the filing of the petition. We've talked a lot about Gregory this morning. But we conceded the point that if there are prospective expenses that apply after the petition is filed, that that's recoverable. I think what was made was somewhat of a latches argument, but if my memory serves me correctly, latches is lack of diligence and prejudice. And I think you would, you might be fomenting fact-based litigation on was there prejudice or wasn't there prejudice and things of that nature if latches becomes the total focus of it. I think there's a bright line rule now. Under the appellate court cases, the bright line rule is, once the petition is filed, whatever award is made is retroactive to the date of the filing of the petition. That's our principle, as Justice Thomas said. That's our principle argument on appeal. That's pretty straightforward. Everybody, with such a rule, there is no fact-based issue. Once the petition was on file, that's it. It can be retroactive to that date. And prior to that date, writing letters, general awareness of kids in college and that nature is not dispositive. So there's no equity involved in it? I would never say there's no equity. I mean, we're dealing with Well, there's a bright line rule and no facts are involved in it. There's been a bright line rule insofar as how the appellate court has treated the issue and we would argue insofar as how the legislature has treated the issue. They've denominated in 513 educational expenses as child support. And child support under 510, the award of child support is only retroactive to the date the petition is filed. So, and let me go one step further, Justice Burke. If the court is going to apply an equitable standard here, I think that the issue raised by Justice Carmeier is very important. Because when Gregory starts college, his father is making money as a computer programmer that increases five or six years later when he goes back to practicing medicine. So if one is going to start balancing equities, I think one has to look at all the equities and not merely, well, gee whiz, this kid went to Cornell and did well. So our position is that this is a statutory issue, that this is, one cannot change the fact that educational expenses for post-majority children is child support. And therefore, we would ask this court for the reasons stated in the petition, both affirm the disposition on the retroactivity and reverse the 75-25 allocation, because it is our position that one can only look at that allocation as based upon the 2006 and thereafter physician income of Dr. Carmeier.  the disposition on the retroactivity and reverse the 75-25 income as a computer programmer when these, when his first child, Gregory, and Ian, who by the time the petition is filed was a junior in college, was a lot less, that income was a lot less when the first two kids start college than what the allocation is based upon at the time of the hearing and at the time of the petition. I thank the court for the court's consideration. Thank you. Counsel? I did want to start, excuse me, and clarify one thing, because I know Justice Carmeier had asked about the incomes of the party and counsel keeps making point of the fact that in 2002, Dr. Peterson had moved to Nevada and wasn't licensed to practice in Nevada and therefore was earning only $94,000 a year. However, the record is clear and I found my notes on this, that from 2003 and 2006, Janet had a combined total income of $140,499. Dr. Peterson from 2003 to 2006 had earned $877,503 during that time period, just to clarify that issue. Counsel has also raised the issue of me saying that educational expenses are in the nature of support and there is a Lofrede decision that determined that modification of a college contribution award is in the nature of support and therefore they use Section 510. I'm not disagreeing with the Lofrede decision because I think that a modification should be allowed. However, I do disagree with the fact that educational expenses equate to child support and I think when I pointed out previously when I was right before you that there is a distinction in the statute between making an application versus making a modification and I'm not going to query with you about the Lofrede case, however, the cases that counsel cited in his brief that he referred to were cases that dealt specifically with child support when you're talking about the Conner case and the Norini case. In the Conner case, a party waited 14 years to come back to seek retroactive relief and was denied. In Norini, a party waited 20 years to seek retroactive relief for child support. As I say, child support is not the same as college education because at the time a judgment is entered or a parentage judgment is entered, there is an ample opportunity for an award of child support at that time. You could have the state involved to help support that. The party's income is known, the number of children are known. A reservation in a child support order is vastly different than a reservation and a judgment for divorce when the parties may not know what school the children may attend. The parties will not know what their income and assets are in the future. Those factors are distinctly different. And so I think that to equate child support and educational expenses, the statute doesn't do it and I don't believe that this court should interpret it in the same vein. He mentions the Pataki case, which also was silent, which does deal with regard to the issue of college contributions. So just as Justice Kilbride had asked me about the difference between a reservation and silence, I think we do see some distinction where silence, they were denied because the parties weren't put on notice that this could come forward. In this case, distinctly different because there's a reservation and either party could come forward and seek relief from the trial court. Now, the council has tried to make the argument that a judgment award, a reservation is actually a judgment award of zero. And I agree with Justice Burke that a zero is zero. It's just a reservation. That's all it is. There has been no application. There's been no adjudication. It's just not enough information to make any specific finding at that time. I think that when you look at counsel's position and his term that no relief should be granted prior to the filing of a petition for modification, application, because he deems them both the same, it really begs the question to this court, when is an appropriate time to come and seek relief from a trial court? As it is with the way the Peterson decision is now, I can assure you since I practice in this area, that there have been people who have been filing with their children, our juniors and seniors in high school, because that's when they start accruing costs for college. You have the SAT test. You have tutors for the SAT test. You have college application costs. You have all of these things going on without even a final determination of what school this child may go to. So technically you can have a case pending in court waiting for additional reimbursement or their right to get some allocation of the expenses that they're advancing for a child to go to any particular college. So if you adopt his view that is now, when is the appropriate time? High school? Do we come back? And I think that as he made the point with his own child and the cost of college and the number of years it's taking people to go to college. For example, people, because of the economic circumstances our country finds ourselves in now, a lot of people are going to junior college before they make the decision about going to a major university. People may take a semester off. All of this is inviting more and more litigation. And as I said previously, a college hearing is not the same as a child support hearing. A child support hearing can be done rather expeditiously with a paycheck with a W-2 form. When this court, when a court has to consider the income, the property of the parties, you're talking about a substantial issue in terms of the lack of judicial economy that it would take for a party to have one child or two children go through the process and to seek relief from the court. I think that when you look at the plain language of the statute, as we've seen, that Janet Kellogg-Peterson was merely seeking an application and an award of college education. I don't believe that that award was time-barred by the language in 513. Counsel is trying to bootstrap in Statute 510 on a modification basis to try and limit her recovery, which I don't believe is appropriate in this circumstance. And for that reason, I believe the court should reverse the appellate court's decision on the issue of retroactivity and affirm the 75 percent allocation that is ordered, Dr. Peterson, affirmed that Dr. Peterson pay. Thank you. Thank you. Case number 110984, Kevin Peterson, appellee versus Janet Kellogg. Peterson, appellant, is taken under advisement as agenda number 10. We thank you for your argument.